Steven F. BROWN, Plaintiff,

v.

Major General William KNOWLTON, Superintendent, United States Military Academy, et al., Defendants.

No. 72 Civ. 3184.

United States District Court,
S. D. New York.

Feb. 14, 1974.

Rabinowitz, Boudin & Standard, New York City, for plaintiff; Joan E. Goldberg, New York City, of counsel.

Paul J. Curran, U. S. Atty., S. D. N. Y., New York City, for defendants; Christopher Roosevelt, Asst. U. S. Atty., New York City, of counsel.

OPINION

ROBERT J. WARD, District Judge.

Plaintiff and defendants each move for summary judgment pursuant to Rule 56, Fed.R.Civ.P. For the reasons hereinafter stated, the plaintiff's motion is denied and the defendants' cross-motion is granted.

This is an action by a former cadet at the United States Military Academy at West Point (the "Academy") seeking declaratory and injunctive relief determining that his separation from the Academy and his discharge from the United States Army were in violation of the due process requirements of the Fifth Amendment to the United States Constitution, setting aside the discharge

approved by defendant Secretary of the Army; and ordering defendants to grant him a Bachelor of Science degree and a commission in the United States Army.

Plaintiff was originally scheduled to graduate from the Academy and to receive a commission in the United States Army in June, 1972. On or about June 2, 1972, an Academic Board convened at the Academy determined that plaintiff was deficient in conduct as a result of his having received demerits in excess of the total allowed for the period from January to June, 1972 and recommended plaintiff's separation from the Academy. The recommendation was approved by defendant Secretary of the Army Froehlke who ordered plaintiff discharged on June 21, 1972. Plaintiff was processed out of the Academy on that date.

Plaintiff, alleging that the procedures employed by the Academic Board violated the due process requirements of the Fifth Amendment, commenced this action for injunctive and declaratory relief and in his original complaint sought reinstatement to the Academy. This Court, Frankel, D. J., relying heavily on Hagopian v. Knowlton, 346 F.Supp. 29 (S.D.N.Y.1972), aff'd, 470 F.2d 201 (2d Cir. 1972), granted plaintiff a preliminary injunction requiring his reinstatement. Unlike the order entered in *Hagopian,* Judge Frankel stated that

"the injunction now to be entered will not limit the measure of plaintiff's reinstatement pending trial and final decision of this case. If any such limitations are to be imposed, they will follow only after specific application to the court upon reasonable notice." [1]
Plaintiff returned to the Academy and repeated his senior year.

The defendants appealed from the order granting the preliminary injunction, but withdrew their appeal on consent after the decision handed down by the Court of Appeals in Hagopian v. Knowlton, 470 F.2d 201 (2d Cir. 1972), which set forth minimal due process standards governing the dismissal of cadets from the Academy.

Following the Court of Appeals' decision in *Hagopian, supra,* the Academic Board was reconvened; and after a hearing purportedly complying with the due process requirements set forth in *Hagopian, supra,* the Board again recommended that plaintiff be dismissed. The Secretary of the Army approved this recommendation. As a result of these actions by defendants, plaintiff was not graduated from the Academy, and did not receive a degree or a commission in the United States Army. His discharge from the Army has not been effected pending application to this Court.

This Court granted defendants' motion to dismiss the complaint on grounds of mootness with leave to plaintiff to serve and file a supplementary complaint asserting any allegations plaintiff had concerning the proceedings subsequent to the entry of the preliminary injunction.[2] Plaintiff thereafter served and filed a supplementary complaint and the instant motions are addressed thereto. Since it is clear that the initial hearing granted to plaintiff did not comport with the requirements of due process as laid down in *Hagopian, supra,* this Court must determine whether the preliminary injunction entered herein barred a subsequent rehearing and, if it did not, whether that rehearing met due process standards.

Plaintiff argues that the terms of the preliminary injunction required the Academy to make an application to the Court before dismissing plaintiff following a rehearing. This Court does not so interpret the terms of the injunction quoted *supra* at page 1120. The limitations referred to those imposed in *Ha-*

1. Opinion, August 3, 1972 at p. 8.

2. Memo Endorsed, September 5, 1973, on defendants' Notice of Motion dated June 7, 1973. See also, Memo Endorsed, September 5, 1973, on plaintiff's Notice of Cross-Motion dated July 2. 1973.

*gopian, supra,* 346 F.Supp. 29, 35 (S.D. N.Y.1972), aff'd, 470 F.2d 201 (2d Cir. 1972)—admission to athletic or extracurricular activities, avoidance of "controversy or conduct likely to lead to disruption, or interfere[nce] with the morale or discipline of the institution." The decision granting the preliminary injunction made no determination concerning the possibility of the Academy holding a second hearing pending trial. Any requirement that plaintiff not be dismissed without application to this Court was complied with by the defendants' motion of June 7, 1973 for an order dissolving the preliminary injunction and dismissing plaintiff's complaint as moot.

Plaintiff challenges the procedures employed at his second hearing on numerous due process grounds:

1. The Academic Board which recommended dismissal was not impartial;

2. No evidence was introduced regarding the offenses charged;

3. No opportunity was given to plaintiff to cross-examine witnesses regarding the offenses charged;

4. Plaintiff lacked knowledge of the elements of certain offenses;

5. The hearing was not timely;

6. On the question of retention, plaintiff was not given an opportunity to examine his file and rebut any adverse statements;

7. All witnesses whom plaintiff had requested were not brought before the Academic Board.

The Court will consider these contentions in light of the minimal standards of due process set forth by the Court of Appeals in *Hagopian, supra.* The Court quoting Wasson v. Trowbridge, 382 F.2d 807 (2d Cir. 1967), there stated:

"The Cadet must be apprised of the specific charges against him. He must be given an *adequate opportunity to present his defense both from*

*the point of view of time and the use of witnesses and other evidence. . . .* The hearing may be procedurally informal and need not be adversarial." (Emphasis supplied in *Hagopian, supra.*) 470 F.2d at 210.

■ Of plaintiff's contentions that the Academic Board was not an impartial finder of the facts only his argument that every member of the Board was present and participated in the initial hearing which resulted in a recommendation that plaintiff be discharged merits discussion. Plaintiff challenged only one member of the Academic Board and that member was removed. Furthermore, it cannot be said that the Board was disqualified *per se* from reconsidering plaintiff's case because of its prior determination absent some showing of actual bias. As is recognized in Wasson v. Trowbridge, 382 F.2d 807, 813 (2d Cir. 1967), "prior official involvement in a case renders impartiality more difficult to maintain"; however, the Court also made clear that "[o]f course the closeness of Academy life and the manpower limitation of a Regiment may at times make it unduly burdensome or impossible to secure a panel wholly lacking previous contact with the events in issue, yet the hearing must proceed." *Id.* Nor has plaintiff shown that "members of the panel had had such prior contact with his case that they could be presumed to have been biased." The only prior contact which members of the panel have been shown to have had with plaintiff's case is the previous hearing. There is not even an allegation that any member of the panel initiated or investigated any charges against plaintiff. Thus, there can be no presumption of bias. Although plaintiff is correct in stating that a judge does not sit in review of his own cases, a judge may sit on a case he had previously heard after reversal and remand. The procedure employed here seems analogous.[3]

3. Although not dispositive, the fact that cadets Hagopian and Jaremko, whose cases have run a course parallel to plaintiff's, were reinstated after rehearings lends support to finding that the Academic Board was not biased *per se.*

Plaintiff appears to argue that he was not apprised of the evidence against him as to certain of the specific delinquency reports and that there was a presumption of correctness accorded the delinquency reports. In reviewing the delinquency reports, the Court finds that the nature of the specific violations was clearly and explicitly set forth in a manner which apprised plaintiff of the charges against him.

■ The Court also concludes that the so-called presumption of correctness accorded to delinquency reports does not violate due process so long as the cadet charged is given an opportunity at some point to rebut the charges.

This is analogous to the business records exception to the hearsay rule which permits records kept in the regular course of business to be admitted into evidence for the purpose of proving the truth of the matter asserted therein. Such records are admissible without the testimony of the person who has knowledge of the facts recorded. In like fashion, delinquency reports are admissible for the purpose of establishing the truth of the statements they contain, and due process is not violated so long as the cadet is given the opportunity to show that the reports lack trustworthiness or are in fact erroneous. Plaintiff was given such an opportunity prior to his dismissal.

Under procedures in effect at the Academy, a cadet could provide a written explanation at the time he was notified of the report, could request reconsideration, could appeal to superior authorities and, following the decision in *Hagopian, supra,* could rebut the charges at a hearing prior to dismissal.

■ Plaintiff's lack of memory regarding certain of the charges did not require the Academy to come forward with additional proof including testimony of the charging officers and other witnesses so long as plaintiff could have called witnesses on his own behalf. Moreover, plaintiff was apprised of the reporting officers' identities. Although

he could have requested that they be called as witnesses, plaintiff did not do so. It, therefore, appears to the Court that this portion of the procedure followed at plaintiff's second hearing met the requirement of *Hagopian, supra,* 346 F.Supp. at 211, that the cadet be given an opportunity "to appear and contest the factual basis of demerits previously awarded."

■ Plaintiff also argues that because this second hearing on his dismissal was held more than nine months after some of the demerits were initially awarded he was denied the opportunity to contest the charges because he did not remember the details of some of the offenses and because witnesses who may have testified in his behalf were no longer available. In making this argument, plaintiff relies heavily on the following statement in *Hagopian, supra*:

"Since the demerit period roughly coincides with the relatively short duration of a college semester, the opportunity to appear and contest the factual basis of demerits previously awarded without a hearing would not be lost to the memory of either the cadet or available witnesses." 470 F.2d at 211.

While an initial hearing held nine months after the award of individual demerits might be untimely, such is not the situation presented by the instant case. The initial proceeding held here did in fact take place "within the relatively short duration of a college semester." *Id.* Since that time the matter at issue has been the subject of litigation. Plaintiff, therefore, had timely notice of the initial proceedings so as to enable him to preserve his recollection of the factual basis of demerits previously awarded in order that the data would not be lost to his memory and to communicate with potential witnesses so that they, too, would not let the events fade from memory. It is clear from the record before the Court that plaintiff's lack of memory of the demerits as to which he raises this argument occurred prior to the first hearing "during the

relatively short duration of a college semester." *Id.*

Furthermore, plaintiff's argument that four witnesses who he wanted to call on his behalf were no longer available is unsubstantiated. Only one of these witnesses, Lieutenant Dull, would have testified on the demerit phase of the hearing. The demerits as to which he would have testified were in fact removed so that his unavailability could not possibly be held to have prejudiced plaintiff.

In addition, plaintiff argues that Lieutenant Dull and three others were desired for their testimony regarding plaintiff's potential for retention and that the Academy should have borne the burden of producing them. One of these witnesses, Lieutenant Kruger did testify.[4]

*Hagopian, supra,* requires that plaintiff have an *opportunity* to present witnesses; it does not set forth any requirement that the Academy arrange for and bear the expense of their attendance. Since plaintiff argues only the latter proposition, he fails to state a claim. There is no evidence nor does plaintiff assert that the Academy hindered or prevented in any other way his presenting these witnesses.

Plaintiff's final argument is that on the question of retention, he was not given an opportunity to examine his file and rebut any adverse statements contained therein. Such a demand was specifically rejected in *Hagopian, supra.* There, Cadet Hagopian demanded the right to inspect the recommendations of his Tactical Officer and Regimental Commander regarding separation, which were before the Academic Board when it made its decision. In rejecting this contention, the Court of Appeals stated:

"[W]e agree with the Court's conclusion in *Wasson* that '[p]articularly on the question of [his] fitness to remain a Cadet, he is not entitled to see the confidential opinions of members of the faculty,' 382 F.2d 813." 470 F.2d at 212.

Thus, plaintiff has no right to examine his file for adverse opinions.

For the foregoing reasons, plaintiff's motion for summary judgment is denied and defendants' cross-motion for summary judgment dismissing plaintiff's supplementary complaint is granted.

Settle judgment on notice.

---

4. In this regard it should be noted that plaintiff did, in fact, present nine witnesses who testified as to his potential for retention. Furthermore, plaintiff was given the opportunity to present written statements from the three absent witnesses which he refused to do. Of course, if plaintiff had a right to have the Academy produce these witnesses, these factors are irrelevant.